IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

SUMMIT COMMUNITY BANK, INC.,

          Plaintiff,

v.                                        CIVIL ACTION NO.   2:19-cv-00794

SOUTHEASTERN LAND, LLC, et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Southeastern Land, LLC's ("Southeastern") Partial Motion to Dismiss. (ECF No. 47.) For the reasons discussed more fully herein, the motion is **DENIED**.

I.      BACKGROUND

This action arises from a lease agreement, dated March 24, 2005, between Plaintiff Summit Community Bank, Inc. ("Summit") and Southern West Virginia Energy, LLC ("SWVE") for, among other things, the mining of coal from real property located in Mingo County, West Virginia ("the Lease"). (ECF No. 26 at 63–64 (Lease Agreement).) At the time the Lease was executed, Eagle Mining, LLC owned 51% of SWVE. (ECF No. 26 at ¶ 12 (Am. Compl).) Consol of WV, LLC, a wholly owned subsidiary of Consol I/CNX ("Consol"), owned the remaining 49% of SWVE. (*Id.*) Summit is the successor trustee of the Closterman Trust ("the Trust"). (*Id.* at 1.) Pursuant to the trust agreement establishing the Trust, Summit is vested with authority to "manage, control and operate all of the real estate . . . belonging to the trust Estate," including the authority

to lease the surface and sub-surface rights of the property for oil, gas, coal, and other minerals. (*Id.* ¶ 2.)

Under the terms of the Lease, the Trust is to receive royalties for coal produced from the leased property. (*Id.* ¶ 23.) Additionally, SWVE was to perform the lessee's obligations supported by the financial backing of Consol. (*Id.* ¶ 13.) SWVE and Consol of Kentucky ("COK") later merged making COK the surviving company. Thus, COK became the lessee, and Consol retained its obligations under the terms of the Lease. (*Id.* ¶¶ 12–14, 17.)

In July 2016, COK and Southeastern Land, LLC ("Southeastern") entered into a purchase agreement, whereby COK agreed, among other things, to assign the Lease to Southeastern and to guarantee Southeastern's performance as lessee under the Lease. (*Id.* ¶ 19.) Thereafter, the parties effectuated the assignment by executing an assignment and assumption agreement on August 1, 2016. COK also executed a personal guarantee ensuring Southeastern's performance under the Lease. (*Id.* at 96–97 (Guarantee Agreement).) According to Section 18 of the Lease, any assignment of SWVE or COK's interest as lessee required Summit or its predecessor trustee's written consent, except as otherwise provided for in the Lease. (*Id.* ¶ 15.) COK never requested and neither Summit nor its predecessor ever gave consent to the assignment. (*Id.* ¶ 21.) Instead, Summit's predecessor-in-interest objected, and Summit continues to object to Southeastern as lessee. (*Id.* ¶¶ 21–22.)

On November 4, 2019, Summit brought this action against Southeastern, COK, and Consol asserting various claims related to the assignment of the Lease to Southeastern and the lessee's obligations under the Lease. Summit alleges that the assignment from COK to Southeastern was improper because Summit's predecessor-in-interest objected to the assignment and never provided

written consent as required under Section 18 of the Lease. (*Id.* ¶¶ 15–16, 21–22.) Additionally, Summit alleges that Southeastern, as well as the other defendants, are in default with respect to the payment of royalties and accrued interest due under the Lease. (*Id.* ¶¶ 23–27.) Pertinent here, the operative complaint asserts claims against Southeastern for injunctive relief directing payment of past due royalties and to cease coal mining operations on the leased property[1] (Count I), specific performance to compel immediate payment of all past due royalties owed to the Trust (Count III), breach of contract (Count IV), and breach of the implied covenant of good faith and fair dealing (Count VI). Summit also seeks declarations that the alleged assignment of the Lease to Southeastern is invalid and void, that COK remains the lessee under the Lease, and that Consol is liable for COK's performance under the Lease (Count VIII and Count IX).

On December 19, 2019, Southeastern filed the instant motion to dismiss. (ECF No. 47.) Summit filed a timely response on January 2, 2020. (ECF No. 50.) Southeastern has not filed a reply. As the deadline for filing a reply has elapsed, the motion is now ripe for adjudication.

## II.     LEGAL STANDARD

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). To withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Wikimedia Found. v. Nat'l Sec.*

---

[1] Summit asserts a nearly identical claim for injunctive relief in Count II against COK and Consol to enjoin mining operations on the leased property until all past due royalties are paid.

*Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Ms. King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)).

In evaluating the sufficiency of a complaint, the court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [the court] to draw on its judicial experience and common sense." *Id.* "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted).

### III.   DISCUSSION

Southeastern moves to dismiss Counts I, II, VIII and IX of the Amended Complaint on the basis that waiver and ratification estop Summit from asserting these claims.  (ECF No. 48 at 1.)

Summit's claims are premised, in part, on the assertion that the supposed assignment under the Lease is invalid and, thus, "Southeastern is a trespasser on the Leased Premises."  (ECF No. 26 at ¶ 38.)  Southeastern argues that these claims fail as a matter of law because "Summit has allowed Southeastern to remain in possession of the leased premises and has accepted substantial royalty payments from Southeastern" without objection between July 2017 and December 2019. (ECF No. 48 at 3–5.)  Southeastern contends that, as a result, "Summit has waived any legal right to assert that the assignment to Southeastern was invalid or deny that Southeastern is Summit's current lessee" under West Virginia law.  (*Id.* at 2.)

The West Virginia Supreme Court of Appeals held in *Kanawha-Gauley Coal & Coke Co. v. Sharp*, 80 S.E. 781, 781–82 (W. Va. 1914) that "[i]f a lessor, with knowledge of a breach by the lessee of the restriction against assignment of the lease, permits the assignee to remain in possession of the premises and accepts subsequently accruing rents from him, the breach is waived."  Unlike in *Sharp*, however, the Lease at issue here contains a non-waiver provision that provides Summit is not precluded from asserting rights in the future that it fails to initially exercise under the Lease.  (ECF No. 26 at 73.)  In particular, the non-waiver provision expressly states that "acceptance by [Summit] of any payments after occurrence of a Default shall not constitute a waiver of any such Default . . . ."  (*Id.*)  Notwithstanding the existence of this non-waiver provision, Southeastern contends that the holding of *Sharp* applies here to bar Summit's claims.

5

In support of this assertion, Southeastern cites *Lowe's Home Centers Inc. v. THF Clarksburg Dev. Two, LLC*, No. 1:12-cv-72, 2014 WL 1048521 (N.D. W. Va. March 18, 2014). There, the Northern District of West Virginia "predict[ed] that West Virginia courts would follow the majority of states and hold that no waiver clauses are themselves subject to waiver upon a showing that the party asserting the clause has waived its rights under another provision of the contract." *Id.* at *7. However, the *Lowe* court offers no rationale for this principle nor has the West Virginia Supreme Court of Appeals spoken directly on this point concerning whether a party can waive a non-waiver provision by conduct or waiver of another clause in the contract. *But see Dunbar Hous. Auth. v. Nesmith*, 400 S.E.2d 296, 300 (W. Va. 1990) (noting in dicta that if a lease contains a non-waiver provision, the lessor can accept late payments without waiving the lessee's breach of the lease terms).

Southeastern argues that its proposition is further supported by the West Virginia Supreme Court of Appeal's decision in *Citibank, N.A. v. Perry*, 797 S.E.2d 803 (W. Va. 2016). In *Perry*, the court considered whether a creditor waived its right to arbitrate, despite a non-waiver clause in the arbitration agreement, by participating in litigation. *Id.* at 806–07. To constitute waiver, the court held that "there must be evidence which demonstrates that a party has intentionally relinquished a known right." *Id.* at 807 (citing Syl. pt. 2, in part, *Ara v. Erie Ins. Co.*, 387 S.E.2d 320 (W. Va. 1989). There being no evidence of such intentionally relinquishment, the court ultimately found there was no waiver. *Id.* at 808. Under the principles offered in *Perry*, arguably Summit intended to waive the non-assignment provision and the non-waiver provision in the Lease. However, this is a factual issue that must be determined by the trier of fact through submission of competent and admissible evidence, not on a motion to dismiss.

There is no question that, "[t]hough waiver may be expressed or may be inferred from actions or conduct, all the attendant facts, taken together, must amount to intentional relinquishment of known right in order that waiver may exist." *Blue v. Hazel-Atlas Glass Co.*, 147 S.E. 22, 22 (W. Va. 1929). "The mere fact that one party to the contract does not terminate it on a breach by the other party of its provisions does not establish a waiver." *Id.* at 26. Rather, where the alleged waiver is implied, it must be established by clear and convincing evidence of the party's intent to relinquish the known right. *See Hoffman v. Wheeling Sav. & Loan Ass'n*, 57 S.E.2d 725, 735 (W. Va. 1950) (a party seeking to establish waiver must prove such an intentional relinquishment by "clear and unmistakable proof of an intent to waive such rights.").

Here, the necessary intent for waiver to estop Summit from asserting its contractual rights under the Lease has not been shown. In fact, Southeastern has offered absolutely no evidence of intent on the part of Summit. To the contrary, the documents attached to the operative complaint, which the Court may properly consider on a motion to dismiss, undermine Southeastern's conclusory assertions. *See Leichling v. Honeywell Int'l, Inc.*, 842 F.3d 848, 851 (4th Cir. 2016).

In a letter dated August 1, 2016, Summit's predecessor objected, not necessarily to Southeastern as assignee, but to COK's guarantee of Southeastern's performance as insufficient under the terms of the Lease. (ECF No. 26 at 99.) Summit requested additional information and confirmation about the guarantor to ensure the assignment was acceptable, and unequivocally stated that without such information, the assignment would be opposed. (*Id.* at 100.) This communication demonstrates that Summit did not intend to relinquish its right to object to the assignment, which it now raises in the instant litigation. *See W. Va. Div. of Highways v. Mason*, No. 17-0430, 2018 WL 2192987, at *4 (W. Va. May 14, 2018) (Memorandum Decision) (holding

7

that petitioner's letters informing respondent that hedges needed to be trimmed showed that petitioner "clearly intended to exercise its right" to remove the hedges); *see also Parsons v. Halliburton Energy Services, Inc.*, 785 S.E.2d 844, 855 (W. Va. 2016) (holding that delay in asserting right to arbitrate alone did not constitute waiver).

Additionally, Summit maintains in its response brief that that it did not intend to waive any rights under the Lease and, instead, simply "reli[ed] on and exercise[d] its rights under the non-waiver provision which provides that accepting payments does not waive any default." (ECF No. 50 at 9.) The Court finds that Summit's reliance on the express language of the non-waiver provision—i.e., that acceptance of any payments after a default has occurred shall not constitute a waiver of any subsequent default—could negate a presumption that Summit accepted the challenged assignment or waived any default under the Lease. *See Fredeking v. Grimmett*, 86 S.E.2d 554, 563 (W. Va. 1955) ("a lessor waives his right" to enforce a condition in a lease by accepting rent with knowledge of breach "unless there are circumstances to negat[e]" the affirmation of a lease which might otherwise arise from the acceptance of rent). Indeed, without additional evidence of intent, it would illogical to construe Summit's reliance on this provision, which is designed to permit acceptance of payment after a default, as a waiver of its rights to assert a breach under the Lease.

Even if waiver did apply to estop Summit from asserting any alleged breach of the Lease, dismissal of Summit's claims would not be warranted. Contrary to Southeastern's assertion, Summit's claims are not entirely dependent on Southeastern's status as a trespasser. In addition to alleging trespass, Summit's claim for injunctive relief in Count I is premised on Southeastern's continued mining and depletion of coal reserves without payment of royalties due under the Lease.

(ECF No. 26 at ¶¶ 35–36.)  Southeastern has not challenged this claim nor has it articulated any reason why this claim should be dismissed.

Further, Summit argues that Southeastern has no standing to assert defenses to Counts II, VIII, and IX in the Amended Complaint because these claims are directed against COK and the other Consol entities, not Southeastern.  Southeastern does not address this issue of standing nor has it replied to Summit's response brief at all.  Neither COK nor Consol have moved to dismiss these counts in the Amended Complaint, and it is not apparent to the Court why Southeastern may properly assert affirmative defenses on behalf of COK and Consol.  However, since waiver has not been established, the Court will not reach this issue.  Accordingly, Southeastern's motion to dismiss on account of waiver is **DENIED**.

Relatedly, Southeastern argues that Summit must be estopped from denying the challenged assignment because Summit ratified the assignment of the Lease by accepting royalty payments from Southeastern.  There is no dispute that the Lease between Summit and COK contained a provision requiring Summit, or its predecessor, to consent in writing to any assignment, (ECF No. 26 at 60 ¶ 18), and that both Summit and its predecessor trustee objected to the assignment to Southeastern.  It is also undisputed that after the purported assignment from COK to Southeastern, Summit accepted royalty payments from Southeastern.  Southeastern argues that Summit has accepted these payments from Southeastern "without any apparent continuing objection."  (ECF No. 48 at 7.)  However, the operative complaint alleges that Summit "continues to object to [the purported] assignment and reserves all legal rights available to it under the Lease . . . including avoidance of the assignment."  (ECF No. 26 ¶ 22.)

Further, Summit correctly notes that only a party with the power to avoid a contractual duty can ratify a previously voidable contract. *See Hamilton v. McCall Drilling Co.*, 50 S.E.2d 482, 484–85 (W. Va. 1948) (holding that a party will be deemed to have ratified a contract if it accepts the benefits under the contract "after knowledge of facts warranting rescission"); *Reece v. Yeager Ford Sales, Inc.*, 184 S.E.2d 727, 730 (W. Va. 1971) (noting that "a contract may be rescinded only by a party to th[e] contract in whom the right exists or his legal representative."); *see also Wamsley v. Champlin Ref. & Chemicals, Inc.*, 11 F.3d 534, 538 (5th Cir. 1993) (explaining that "[t]o have ratification, there must be an antecedent contract that was previously voidable, but not avoided."). As Summit was not a party to the assignment agreement between COK and Southeastern, the doctrine of contractual ratification has no application here.[2] Accordingly, because ratification does not apply to bar Summit's claims, Southeastern's motion is also **DENIED** on this basis.

### IV. CONCLUSION

For these reasons, Southeastern's Partial Motion to Dismiss, (ECF No. 47), is **DENIED**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: June 12, 2020

THOMAS E. JOHNSTON, CHIEF JUDGE

---

[2] Like waiver, "ratification is a matter of intent." *Tri-State Petroleum Corp. v. Coyne*, 814 S.E.2d 205, 220 (W. Va. 2018). Again, Southeastern has not established the necessary intent on the part of Summit nor is it appropriate for the Court to resolve this issue at the pleading stage.